IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANGEL D. GARCIA,

    Plaintiff,

vs.

JOHN SHANKS, GARY MIER,
VIRGIL GARCIA, and MIKE
CARRILLO, in their individual
capacities,

    Defendants.

No. CIV 98-1149 PK/LFG

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendants' Motions to Dismiss on Qualified Immunity Grounds filed May 13, 1999 (docs 47 & 53), converted to summary judgment motions pursuant to Fed. R. Civ. P. 12(b). See Order filed June 1, 1999 (doc. 57). The court, being fully advised in the premises, finds that the converted motions are well-taken and should be granted. Defendants John Shanks, Gary Mier, Virgil Garcia, and Mike Carrillo are entitled to qualified immunity on Plaintiffs' claims against them in their individual capacities.

Background

In this civil rights action pursuant to 42 U.S.C. § 1983 based upon Plaintiff's employment termination, Plaintiff seeks damages and attorney's fees and costs. The current complaint contains a single count alleging that Defendants, acting in their individual capacities, deprived him of his Fifth and Fourteenth Amendment rights to equal protection and due process. See Third Amended Complaint for Damages filed Mar. 5, 1999 (doc. 32).

Plaintiff worked for the New Mexico Corrections Department ("Department") as a Corrections Officer IV. On February 16, 1996, he and his wife had a domestic dispute that resulted in his arrest. On May 20, 1996, he pled guilty to false imprisonment and two counts of aggravated assault against a household member, all fourth degree felonies. His understanding was that he would receive a conditional discharge, thereby avoiding an adjudication of guilt, provided he successfully completed probation. See N.M. Stat. Ann. § 31-20-13 (Michie 1994 Repl. Pamp.). This arrangement was necessary so as to avoid the loss of his job. See N.M. Stat. Ann. § 33-1-11(D) (Michie 1998 Repl. Pamp.) (barring individual convicted of felony from employment as corrections officer).

The parties dispute whether Plaintiff pled guilty solely on the advice of his attorney, or whether he relied on assurances from Defendants Mier, Shanks, and Carrillo that pleading guilty and obtaining a conditional discharge would keep him from being fired. During the relevant time period, Defendant Mier was an

Associate Warden and Plaintiff's immediate supervisor. Defendant Shanks served as the Warden of the Department, and Defendant Carrillo was the Department's Personnel Director and Director of Administrative Services.

Defendant Shanks admits to advising Plaintiff that, under the circumstances Plaintiff described, a guilty plea without a conviction would not result in termination. See Defendants' Reply to Plaintiff's Response to Defendants Motion to Dismiss on Qualified Immunity Grounds ("Def. Reply") filed June 18, 1999 at 2, ¶ 6 (doc. 60). However, Defendant Shanks contends that Plaintiff "minimized the level of threatened violence" leading to his arrest. Id., Ex. H at 3 (Notice of Final Action). Based on a police report and Plaintiff's own admissions, Defendants believed that Plaintiff threatened to kill his wife and the police seized a weapon from his home. See Plaintiff's Response to Defendants Motion to Dismiss on the Grounds of Qualified Immunity ("Pl. Response") filed May 13, 1999, Ex. 1 at 60 (doc. 49) (State Personnel Board hearing testimony of Shanks); Def. Reply, Ex. A (police report).

In June 1996, a news broadcast and newspaper article mentioned Plaintiff's domestic dispute in the context of reports of drug abuse by Department personnel. Shortly thereafter, prison graffiti calling Plaintiff a wife-beater was discovered. According to the Defendants, Plaintiff was transferred to an administrative post, based upon inmates' adverse reaction to his arrest.

On July 26, 1996, Plaintiff received a conditional discharge and two years'

supervised probation, which he believed entitled him to continue working for the Department. However, the next month, Defendant Garcia – the Department's Equal Employment Officer – informed Plaintiff that other employees resented the fact that he had not been fired. On August 28, 1996, Plaintiff received a Notice of Contemplated Action and was placed on administrative leave. A pre-termination hearing was held on September 13. On September 16, Plaintiff was terminated for violating the law and the Code of Ethics, thereby compromising his "ability to function effectively as a correctional officer with inmates and coworkers," and raising "serious questions about [his] ability to refrain from reacting violently in stressful situations." Def. Reply, Ex. H at 3 (Notice of Final Action).

Plaintiff appealed to the New Mexico State Personnel Board, alleging that the stated reason for his discharge was pretextual. The Personnel Board held a hearing during which Plaintiff called various witnesses to prove his claim that he had been treated differently than similarly situated employees. In Plaintiff's view, the sworn testimony of these witnesses demonstrated that at least four corrections officers "committed similar if not more egregious acts than [he did] and were not terminated." Third Amended Complaint for Damages filed Mar. 5, 1999 at 6, ¶ 28 (doc. 32). Although the Personnel Board apparently declined to order reinstatement, Plaintiff received unemployment compensation because of a procedural deficiency.

Discussion

Because Defendants' motion to dismiss has been converted to a motion for summary judgment, all evidence and reasonable inferences therefrom must be considered in the light most favorable to the Plaintiff as the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). However, the nonmovant may not rest upon his pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Defendants have raised the defense of qualified immunity on all of Plaintiff's claims. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

As a threshold matter, Plaintiff alleged that Defendants were acting under color of state law. See Third Amended Complaint at 6, ¶ 33. Defendants were acting within the scope of their duties when they advised Plaintiff to plead guilty and later terminated him. Responding to information that an employee volunteers about his qualifications and terminating him are plainly within the discretion of

5

supervisory-level public officials.

Having decided that Defendants performed discretionary functions, see Harlow, 457 U.S. at 818, a court must "ask if [Plaintiff] has asserted the violation of a constitutional right at all, and then assess whether that right was clearly established at the time of [Defendants'] actions." Gehl Group v. Koby, 63 F.3d 1528, 1533 (10th Cir. 1995) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). Where a plaintiff fails to show that his constitutional rights were violated, it is unnecessary to decide whether those rights were clearly established when the alleged misconduct occurred. See id.

I. Procedural Due Process

The current complaint asserts that Defendants infringed Plaintiff's due process rights but does not differentiate between procedural and substantive due process. See Third Amended Complaint at 6-8. A plaintiff bears the burden of identifying the rights he believes the defendants violated; "the defendants should not be required to guess whether [he] has pled a substantive due process claim, a procedural due process claim, or both." Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 527 (10th Cir. 1998) (internal citation omitted). However, because Defendants clearly raised qualified immunity with regard to both procedural and substantive due process, the court will assess whether Plaintiff presented sufficient evidence that either right was violated.

Assuming Plaintiff had a property interest in his employment, see Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985), the Due Process Clause requires that he "be given an opportunity for a hearing before [being] deprived" of that property interest. Id. at 542. Plaintiff admits that he was informed of why the Department dismissed him and received "a full evidentiary hearing" prior to termination. Pl. Response at 6; see Third Amended Complaint at 4, ¶¶ 21, 22. This exceeds the requirements of Loudermill, 470 U.S. at 545, in which the Supreme Court noted that a pretermination hearing "need not be elaborate" – it can be "'something less' than a full evidentiary hearing." Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 343 (1976)).

Plaintiff presents no evidence, nor does he allege, that he lacked notice of the hearing and the reason for it, that he was not allowed to present his side of the case, or that the hearing officer was biased. He merely asserts that he never learned the results of the hearing – even though he was ultimately terminated, and the Notice of Final Action informed him that Defendant Shanks "reviewed all documents and your responses from the Oral Response Hearing, and [chose] to take this final action." Def. Reply, Ex. H at 5 (Notice of Final Action). The results of the hearing are apparent.

On these facts, no aspect of the pretermination hearing violated Plaintiff's procedural due process rights. See Loudermill, 470 U.S at 546 ("The essential requirements of due process . . . are notice and an opportunity to respond.").

7

Additionally, Plaintiff has not demonstrated any procedural deficiency in his appeal before the Personnel Board.

II. Substantive Due Process

Citing McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir. 1994), and Roe v. Antle, 964 F. Supp. 1522, 1533 (D.N.M. 1997), Defendants contend that governmental employees alleging pretextual termination in non-legislative cases may not bring substantive due process claims because, at most, only procedural due process protection applies. See Memorandum in Support of Defendants' Motion to Dismiss on Qualfied Immunity Grounds filed May 13, 1999 at 6 (doc. 48). Neither the Supreme Court nor the Tenth Circuit has decided whether a property interest in governmental employment is entitled to substantive due process protection, see Curtis v. Oklahoma City Public Sch. Bd of Educ., 147 F.3d 1200, 1215 n. 17 (10th Cir. 1998); Archuleta v. Colorado Dep't of Insts., 936 F.2d 483, 489 n.6 (10th Cir. 1991), and the court need not reach the issue because summary judgment on the substantive due process claim is clearly appropriate on the merits.

To prevail on a substantive due process claim, a plaintiff must show that the defendant's action "'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" County of Sacramento v. Lewis, 118 S. Ct. 1708, 1717 (1998) (quoting Collins v. Harker Heights, 503 U.S. 115, 128

(1992)); Tonkovich, 159 F.3d at 528.  Here, the crux of Plaintiff's argument is that (1) Defendants Carrillo, Mier, and Shanks knowingly misrepresented his job security by guaranteeing that he would not be fired if he pled guilty and received a conditional discharge, and (2) Defendant Garcia made Defendant Mier privy to a conversation Plaintiff believed to be confidential.  See Third Amended Complaint at 3-4, ¶¶ 13-15; 19-20; Pl. Response at 7.  Even if true, such allegations do not demonstrate arbitrary, outrageous, and conscience-shocking behavior.  See Tonkovich, 159 F.3d at 528.

As the Supreme Court and the Tenth Circuit have held in the employment context, "[t]he Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions."  Curtis, 147 F.3d at 1215 (quoting Bishop v. Wood, 426 U.S. 341, 350 (1976)).  Plaintiff has presented no evidence that Defendants intentionally misled him, and Defendants could not guarantee that Plaintiffs' position in the Department would always be protected from the consequences of the unfortunate domestic abuse incident.  In this regard, it is important to remember that Plaintiff has never claimed that Defendants induced him plead guilty when he was factually innocent.  Plaintiff has not shown that Defendants' conduct shocks the conscience, and therefore he has not demonstrated a violation of his substantive due process rights.  See Tonkovich, 159 F.3d at 528

III. Equal Protection

Finally, Plaintiff alleges violations of his right to equal protection of the law. He claims that (1) Defendants subjected him to disparate treatment on the basis of his Hispanic ethnicity, (2) harassed him, and (3) retaliated against him. The court will address each allegation in turn.

To establish discrimination in violation of the Equal Protection Clause, Plaintiff must show that he was treated differently than those similarly situated. See <u>Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985); <u>Hennigh v. City of Shawnee</u>, 155 F.3d 1249, 1257 (10th Cir. 1998). "If the groups [or individuals] are not similarly situated, there is no equal protection violation." <u>United States v. Woods</u>, 888 F.2d 653, 656 (10th Cir. 1989).

Plaintiff alleges that he "is aware of several similarly situated Anglo employees who, although they committed aggravated battery, racial discrimination and other illegal acts, were not disciplined and harassed as [he] had been." Third Amended Complaint at 5, ¶ 25. He identifies four employees whom he contends were similarly situated and treated more leniently for comparable offenses.

Two of them – Ymelda Valdez and Carl Toers-Bijin – engaged in misconduct that did not result in criminal charges or involve any degree of violence. Mr. Toers-Bijin, brother of the Deputy Warden left a gun in a government vehicle that was found by an inmate. He was suspended for ten days,

but not terminated. See Third Amended Complaint at 5, ¶ 27; Pl. Response at 4, ¶ l. Ms. Valdez, an Associate Warden, incorrectly paroled an inmate and was transferred and given a letter of reprimand. Pl. Response at 5, ¶ n.

The other two – Ben Berkheimer, a corrections officer, and Associate Warden Brian Culp – were charged with criminal conduct. A court found Mr. Culp had committed battery upon a fellow officer. Mr. Culp restrained the fellow officer against a prison wall and twice demonstrated what had occurred in an earlier incident involving an inmate. See Pl. Response, Ex. 1 at 129-32 (Culp testimony). Mr. Culp received a conditional discharge that resulted in no adjudication of guilt. See id. Pl. Response at 5, ¶ m; id. Ex 1 at 130-31 (Culp testimony). He also received a letter of reprimand, but was later promoted. See id. Plaintiff also directs our attention to two incidents involving Mr. Berkheimer. Mr. Berkheimer entered an Alford plea, receiving a year's probation with a deferred sentence, on an aggravated battery charge arising from a domestic dispute. See Pl. Response at 4, ¶ k; id. Ex. 1 at 180-82 (Berkheimer testimony). In the second incident, he was charged with domestic violence when he knocked over a table and hit his sister-in-law in the head during a family argument. See id. at 182-83, 186-87 (Berkheimer testimony). Mr. Berkheimer received intervention, rather than termination, as a result of these events. See Pl. Response at 4, ¶ k.

None of these employees was similarly situated to Plaintiff for the purpose

11

of an equal protection claim, however. First, neither Ms. Valdez, Mr. Toers-Bijin, nor Mr. Culp engaged in conduct comparable to Plaintiff's. Ms. Valdez and Mr. Toers-Bijin did not engage in any kind of violence at all, see Ibarra v. Martin, 143 F.3d 286, 291 (7th Cir. 1998) (equal protection claim based on race could not survive summary judgment because behavior of allegedly similarly situated persons did not involve crucial factors, such as violence), and Mr. Culp's battery arose from a work-related interaction that apparently got out of hand, unlike Plaintiff's battery and false imprisonment of his family. Second, Plaintiff has failed to show that any of these employees were working under the same supervisor as he was or that they had the same standards governing evaluation and discipline as he did; indeed, Mr. Culp and Ms. Valdez appear to have been his superiors. Cf. Aramburu v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997) (stating that, for a Title VII disparate treatment claim, "[s]imilarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline") (internal citation omitted); Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170, 1175 (10th Cir. 1996) (holding that female Title VII plaintiff must present evidence that "male coworkers were similarly situated with respect to their job functions").

Of the two employees involved in violent incidents, only one – Mr. Berkheimer – faced the same or similar charges as Plaintiff, and although Mr. Berkheimer's conduct is disturbing given his capacity as a corrections officer,

12

Mr. Berkheimer neither used, nor threatened to use, a firearm. Mr. Berkheimer also stated under oath that he is "a coyote," part Spanish and part German. See Pl. Response, Ex. 1 at 182 (Berkheimer testimony). Because both he and Plaintiff are of Hispanic ethnicity, racial bias cannot explain the differing treatment they received. Finally, Plaintiff has not presented any evidence that these Defendants, in their individual capacities, were responsible for the decision not to terminate Mr. Berkheimer.

The nonmovant must present more than a scintilla of evidence supporting his theory. See Anderson v. Coors Brewing Co., No. 98-1261, 1999 WL 444925, at *2 (10th Cir. June 30, 1999) (internal citations omitted). Because Plaintiff failed to carry his burden of showing that similarly situated employees received different treatment, his equal protection claim must fail. He has provided neither direct evidence of discriminatory intent nor indirect evidence that the facially legitimate, non-discriminatory reasons[1] of the Department in terminating him were pretextual. See Randle v. City of Aurora, 69 F.3d 441, 450, 452 n.17 (10th Cir. 1995) (requisite elements for disparate treatment case under § 1983 and Title VII are the same); Lewis v. City of Fort Collins, 903 F.2d 752, 755 & n.1 (10th Cir. 1990).

---

[1] The legitimate, non-discriminatory reasons include a lack of effectiveness in dealing with inmates and coworkers after the incident and greater potential to react inappropriately in stressful situations.

Plaintiff also alleges that Defendants failed to provide adequate training to prevent him from being harassed in the workplace or to enforce existing departmental policies proscribing such harassment.  See Third Amended Complaint at 7, ¶¶ b & c.  The requisite elements for a prima facie case of racial harassment under § 1983 and Title VII are the same, see Risinger v. Ohio Bureau of Workers' Comp., 883 F.2d 475, 483 (6th Cir. 1989); cf. Lankford v. City of Hobart, 27 F.3d 477, 480 (10th Cir. 1994), as are the elements and burden of proof in racial and sexual harassment cases.  See Risinger, 883 F.2d at 485 (citing Patterson v. McLean Credit Union, 491 U.S. 164 (1989)).

"Hostile work environment harassment occurs where . . . conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment." Sauers v. Salt Lake County, 1 F.3d 1122,1126 (10th Cir. 1993).  The harassment must be sufficiently severe or pervasive  "to alter the conditions of the [plaintiff's] employment and create an abusive working environment." Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986).  In the instant case, Plaintiff has utterly failed to describe the nature and frequency of the harassment or the identity of his harassers.  Thus, he has not established a prima facie case of racial harassment in violation of his equal protection rights.

Finally, Plaintiff claims that Defendants and subordinates under their control "directly or indirectly engag[ed] in . . . retaliatory acts against [him] after

he had appropriately sought to comply with the laws, policies and procedures of Santa Fe County, the State of New Mexico and the New Mexico Corrections Department." Third Amended Complaint at 7, ¶¶ d & e. The alleged retaliation seems to have encompassed intentionally misleading statements, unequal discipline, and failure to provide training or enforce departmental policies regarding retaliation.

"[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under . . . Section 1983 even if the act, when taken for a different reason, would have been proper." Smith v. Maschner, 899 F.2d 940, 948 (10th Cir. 1990) (quoting Buise v. Hudkins, 584 F.2d 223, 229 (7th Cir. 1978)). However, Plaintiff has not asserted that his conduct was protected by the First Amendment or any other constitutional provision. Furthermore, "[t]o survive a summary judgment motion [on a First Amendment retaliation claim], a plaintiff must point to specific evidence showing the official's actions were improperly motivated." Walter v. Morton, 33 F.3d 1240, 1243 (10th Cir. 1994). This Plaintiff has not done.

Plaintiff has not demonstrated that Defendants violated his rights to procedural due process, substantive due process, or equal protection under § 1983. "Where a plaintiff fails to demonstrate that a defendant's conduct violated the law, [the court] need not reach the issue of whether the law was clearly established." Gehl Group, 63 F.3d at 1533. Thus, Defendants are entitled

15

to qualified immunity on all claims against them.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Defendants' Motions to Dismiss on Qualified Immunity Grounds filed May 13, 1999 (docs 47 & 53), converted to summary judgment motions pursuant to Fed. R. Civ. P. 12(b), are granted.

DATED this <u>31st</u> day of August, 1999 at Santa Fe, New Mexico.

*Paul Kelly Jr.*
United States Circuit Judge
Sitting by Designation

Counsel:

Gilbert J. Vigil, Law Office of Gilbert J. Vigil and Lorenzo E. Tapia, Albuquerque, New Mexico, for Plaintiff.

W. Ann Maggiore, Risk Management Legal Bureau, Santa Fe, New Mexico, for Defendants.